**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NATHAN RICE, ET AL** | **CIVIL ACTION** |
| **VERSUS** | |
| **RELIASTAR LIFE INSURANCE COMPANY, ET AL** | **NO. 11-44-BAJ-M2** |

## RULING & ORDER

This matter is before the Court on the Motion to Strike (R. Doc. 5) filed by defendants, Willie Graves, Sheriff of Livingston Parish ("Sheriff Graves") and Deputy Joel Arnold ("Deputy Arnold")(collectively "defendants"). Plaintiffs, Nathan Rice, Brandon Rice, Johnathon Rice, Jessica Rice, and Brenda Rice, on behalf of her minor daughter, M.R., individually and on behalf of their deceased father, Gerald Rice ("Mr. Rice")(collectively "plaintiffs"), have filed an opposition (R. Doc. 15) to defendants' motion, in response to which defendants have filed a supplemental memorandum in support of their motion to strike (R. Doc. 18).

## FACTS & PROCEDURAL BACKGROUND

This suit relates to the response of Deputy Arnold to an emergency 911 call allegedly made by someone other than Mr. Rice, which reported that Mr. Rice was at his home with a gun and in a suicidal state of mind. According to the complaint, Deputy Arnold and several other Livingston Parish deputies and detectives arrived at Mr. Rice's residence, where he was sitting alone holding a gun inside his truck that was parked inside a closed garage attached to his home. While one deputy allegedly went to get a taser, Deputy Arnold and another deputy attempted to get into the garage from the kitchen annexed to

1

it by way of a short hallway. Plaintiffs contend that Mr. Rice asked the deputies to leave several times and told them that he did not call them and that he was not going to hurt anyone. While sitting in his garage, he allegedly fired a single shot into the west wall of the garage, away from both himself and the deputies who were in his kitchen behind a closed hallway door. Deputy Arnold and the other deputies then advanced to the garage, where they confirmed that Mr. Rice had not harmed himself or anyone else. They then demanded that Mr. Rice relinquish his gun as they returned back to the kitchen behind cover. After again asking the deputies to leave and they refused, Mr. Rice walked to his kitchen allegedly to get a beer. Plaintiffs contend that Mr. Rice never pointed his gun at Deputy Arnold or any of the deputies, but as he was walking toward the kitchen, Deputy Arnold fired four (4) shots from his 40 caliber Glock pistol, hitting Mr. Rice three (3) times in the chest and killing him. The plaintiffs contend that such conduct by Deputy Arnold constituted excessive and unreasonable use of deadly force, among several other torts. They also allege that Sheriff Graves is liable under the doctrine of *respondeat superior* for the actions of Deputy Arnold and that Sheriff Graves is further liable for the negligent hiring, retention, training, and supervision of Deputy Arnold.

At issue in the present motion are three (3) paragraphs of the plaintiffs' complaint, Paragraphs 27-29, which follow the above factual allegations contained in the complaint. Paragraph 27 alleges that, at the time he "killed [Mr.] Rice, Arnold maintained a public internet page on MySpace, at which he included a photograph of a nameless, amoral gunslinger played by Clint Eastwood, above the caption 'How I feel most of the time!!!!'" Plaintiffs have attached a "relevant screen shot, accessed a week after Arnold killed Rice," to their complaint as Exhibit "A."

Paragraph 28 alleges that, several months prior to "killing Rice, Arnold battered, brutalized, falsely arrested, and maliciously prosecuted Frank Livermore, a 70 year-old cancer patient, and turned Livermore's property over to a career criminal and habitual drug user."  Plaintiffs have attached to their complaint a copy of Livermore's complaint against Deputy Arnold and Sheriff Graves as Exhibit "B."  Plaintiffs also amended their complaint, subsequent to the filing of the present motion to strike, to add the following allegations to Paragraph 28:  (A) On June 6, 2009, Livermore wrote to Sheriff Graves complaining about Deputy Arnold's conduct; (B) Thereafter, Livermore made numerous complaints and requests for information about Deputy Arnold and asked Sheriff Graves to have the false charges against him dropped; (C) Sheriff Graves ignored Livermore's complaints about Deputy Arnold's conduct; (D) On January 25, 2010, two days before Deputy Arnold shot Mr. Rice, Livermore sent another letter to Sheriff Graves' internal affairs department, inquiring about the status of Livermore's complaint and requesting charges be filed against Deputy Arnold for his unlawful conduct; (E) Sheriff Graves continued to ignore Livermore's complaints; and (F) At no time before Mr. Rice's killing, did Sheriff Graves ever discipline Deputy Arnold, ensure that Deputy Arnold was adequately trained and supervised, or display anything other than deliberate indifference to Deputy Arnold's unlawful conduct and fitness as a peace officer.  *See*, R. Doc. 13.  Plaintiffs attached Exhibits "E" and "F" (copies of Livermore's written complaints concerning Deputy Arnold) to their amended complaint in support of Paragraph 28's additional allegations.

Finally, Paragraph 29 of the complaint alleges that Mr. Rice was "shot and killed not by all five deputies on the scene, but by the one deputy with a documented history of unprovoked violence and with the emotional state - 'most of the time!!!!' - of a trigger-happy

3

anti-hero of 1960s cinema." In their present motion, defendants contend that the allegations in Paragraphs 27-29 (and related exhibits), which relate to Deputy Arnold's alleged "history" as an aggressive individual with a violent emotional state that allegedly caused him to act violently toward an individual other than the plaintiffs, should be struck because they have "no connection to the substantive issues in this case, serve no purpose other than to confuse the issues in this case, and are overly prejudicial to Deputy Arnold."

## **LAW & ANALYSIS**

Pursuant to Fed. R. Civ. P. 12(f), a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). While Rule 12(f) motions to strike are generally disfavored because they are seen as tools to delay litigation, they should be granted if they concern allegations that "have no possible relation to the controversy and may cause prejudice to one of the parties." 5A Wright & Miller, *Federal Practice and Procedure* §§1382 (2d ed. 1990).

Based upon the above standards, the undersigned finds that defendants' motion to strike should be granted in part and denied in part. As to the allegations set forth in Paragraph 28 of the original and amended complaints (concerning the lawsuit and complaints of Livermore against Deputy Arnold), the undersigned agrees with the approach taken by the U.S. District Court for the Eastern District of Louisiana in *Curran, et al v. Aleshire, et al*, Civil Action No. 09-2993 (E.D.La. 2009). In that case, the plaintiffs sued a sheriff's deputy and the sheriff, alleging a "custom, habit, and practice [on the part of the sheriff's deputy] of battering and brutalizing individuals." The defendants sought to strike several paragraphs of the complaint (and related exhibits) that concerned prior incidents of alleged brutality while the sheriff's deputy was employed in a different parish. The

4

Eastern District denied the motion to strike on the basis that it could not determine, at the pleadings stage of the litigation, whether any of those prior incidents were relevant to the suit for some legitimate purpose and whether they would be admissible under the Rules of Evidence. The court agreed with the plaintiffs' contention that the motion to strike was, in essence, a motion in limine and, as such, was clearly premature. The court further indicated that the exhibits were pleadings filed in other cases that were therefore a matter of public record. Finally, the court noted that its denial of the motion to strike was in no way determinative of the admissibility of the exhibits at a later stage in the litigation. *See*, R. Doc. 15-1.

As in *Curran*, the undersigned finds that the defendants' motion to strike the allegations in Paragraph 28 concerning Livermore's prior complaints and lawsuit regarding Deputy Arnold's conduct is premature. Allegations in that regard could certainly be relevant to plaintiffs' contentions that Sheriff Graves was negligent in hiring, retaining, training, and/or supervising Deputy Arnold given his alleged history of violence and misconduct.[1]

---

[1] To prevail on a "failure to train" claim, the plaintiffs must prove that Sheriff Graves' failure to train Deputy Arnold resulted from deliberate indifference to the rights of the citizens with whom Deputy Arnold regularly interacts. *Ellis v. Packnett,* 2007 WL 2688540 (S.D.Miss. 2007), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "Deliberate indifference is more than mere negligence." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). The plaintiff must show that, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* Although a showing of deliberate indifference can be based upon a single incident, the Fifth Circuit has stated that such a showing is "difficult" and has held that, generally, claims of inadequate training require that the plaintiff demonstrate a pattern of violations. *Id.* Furthermore, "[n]otice of a pattern of similar violations is required." *Id.* One of the types of evidence used in proving a "failure to train" claim is evidence of prior incidents which are similar, in varying degrees, to the incident complained of in the case at bar. *Ellis*, at *11 (holding that a genuine issue of material fact existed as to the plaintiff's failure to train claim where evidence of prior incidents of illegal arrests and excessive force, similar to the incident complained of and involving the same deputy, were presented as well as evidence that the sheriff was directly notified about those three prior incidents); *Sanders-Burns*, at 381 (The prior acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party").

Moreover, as defendants concede in their supporting memorandum, such allegations could also be relevant to establishing Deputy Arnold's state of mind at the time of the incident in question. There is no way of determining, at this early stage in the litigation, whether evidence concerning the Livermore incidents will be admissible under the Rules of Evidence. While the evidence may ultimately be held inadmissible due to prejudice, irrelevance, and/or on some other basis, that determination can be more appropriately made through a ruling upon a pre-trial motion in limine, rather than through a motion to strike portions of the pleadings at this juncture.[2] *See also, Morton v. Town of Wagram*, 2001 WL 68232, *1-*2 (M.D.N.C. 2001)(denying a motion to strike allegations in the complaint in a case where the plaintiff had alleged causes of action for a failure to train and negligent training and supervision of a police officer by the police chief. The allegations concerned another shooting incident that had occurred about three months prior to the shooting at issue; the defendants argued that the allegations should be stricken because they were conclusory, potentially inflammatory, and were not relevant to the subject matter of the complaint. The court held that allegations concerning any prior shooting incidents involving the police officer in question may be relevant to the issue of notice and policy).

Paragraphs 27 and 29 and Exhibit A to the complaint, however, should be struck because they are merely argumentative and prejudicial to Deputy Arnold and do not add to the substantive allegations of the complaint. The screenshot of the MySpace page,

---

[2] *Schultz v. Braga*, 290 F.Supp.2d 637, 655 (D.Md. 2003), the case cited by defendants in support of the proposition that the allegations concerning prior acts by Deputy Arnold should be struck, did not involve allegations of negligent hiring, retention, training, and supervision and, as a result, is distinguishable from this matter.

attached as Exhibit A to plaintiffs' original complaint, is particularly prejudicial, considering that there is no evidence linking it to Deputy Arnold as his profile page. Deputy Arnold's name is nowhere on the page, and defendants represent to the Court that the photograph on the page is not of Deputy Arnold or of any other defendant in this case and has no connection to the incident at issue in this case whatsoever. As defendants contend in their motion, the allegations and evidence in Paragraphs 27 and 29 are essentially the equivalent of "name calling," which has no place in the pleadings of this matter. Whether or not plaintiffs will ultimately prevail against the defendants depends not upon the argumentative allegations in Paragraphs 27 and 29 but instead upon whether or not Deputy Arnold and Sheriff Graves committed the torts alleged. *See, Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F.Supp.2d 473, 481 (S.D.N.Y. 2003)(argumentative statements in a complaint, calling the defendants "unscrupulous" people and "con artists," were stricken, since such statements amounted to nothing more than name calling, and they did not contribute to the plaintiff's substantive claims).[3]

---

[3] *See also, Hughes v. Kaiser Jeep Corp.,* 40 F.R.D. 89, 93 (D.S.C. 1966)(argumentative term in complaint was stricken); *Martin v. Hunt*, 28 F.R.D. 35, 35-36 (D.Mass. 1961)(entire argumentative and scandalous complaint was stricken); *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D.Cal. 1998)(Allegation by estate of deceased celebrity and another plaintiff that defendants' use of celebrity's name in connection with their product was "[l]ike vultures feeding on the dead" was immaterial and impertinent and was stricken).

Accordingly;

**IT IS ORDERED** that the Motion to Strike (R. Doc. 5) filed by defendants, Willie Graves, Sheriff of Livingston Parish, and Deputy Joel Arnold, is hereby **GRANTED IN PART**, in that Paragraphs 27 and 29 and Exhibit A of the original complaint shall be struck from the record, and **DENIED IN PART**, in that Paragraph 28 and Exhibits B, E, and F shall not be struck from the record.

Signed in chambers in Baton Rouge, Louisiana, March 29, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**