UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NATHAN RICE, ET AL | CIVIL ACTION |
| VERSUS | |
| RELIASTAR LIFE INSURANCE COMPANY, ET AL | NO. 11-44-BAJ-CN |

**RULING & ORDER**

This matter is before the Court on the motions to quash and for protective order (R. Docs. 42 and 43) filed by defendant, Livingston Parish Sheriff's Deputy Joel Arnold ("Deputy Arnold"). Plaintiffs, Nathan Rice, Brandon Rice, Johnathon Rice, Jessica Rice, and Brenda Rice, on behalf of her minor daughter, M.R., individually and on behalf of their deceased father, Gerald Rice ("Mr. Rice")(collectively "plaintiffs"), filed an opposition (R. Doc. 47) to such motions.

**FACTS & PROCEDURAL BACKGROUND**

On January 25, 2011, plaintiffs filed this suit against Deputy Arnold, Livingston Parish Sheriff Willie Graves ("Sheriff Graves"), and Reliastar Life Insurance Company ("Reliastar"), pursuant to 42 U.S.C. §1983, relating to the shooting death of Mr. Rice on January 27, 2010. Specifically, they contend that Deputy Arnold's conduct during that incident constituted an excessive and unreasonable use of deadly force, among several other torts. They also allege that Sheriff Graves is liable under the doctrine of *respondeat superior* for Deputy Arnold's actions and further liable for the negligent hiring, retention, training, and supervision of Deputy Arnold. Defendants contend that Deputy Arnold's actions were reasonable under the circumstances.

1

At issue in the present motion are two (2) subpoenas issued by the plaintiffs in this matter on or about September 1, 2011 to the following non-parties: (1) Livingston Parish Police Department ("LPPD"), Deputy Arnold's former employer; and (2) Matrix, Inc. ("Matrix"), Robert D. Davis, Ph.D., M.P. ("Dr. Davis"), and Carey D. Rostow, Ph.D., M.P. ("Dr. Rostow").[1] On September 9, 2011, Deputy Arnold filed the present motions to quash and for protective order, wherein he contends that the two subpoenas in question should be quashed and protective orders should be issued preventing production of the requested

---

[1] The subpoena directed to the LPPD requests: (1) LPPD's complete personnel file or similar documents related to Deputy Arnold, including all pre-employment examinations or evaluations, training records, employment application, performance evaluation(s), and separation or termination documents, and any other related records; (2) all documents and tangible things (including letters and e-mail transmissions) provided or sent to LPPD or anyone acting on its behalf by the Livingston Parish Sheriff's Office, Sheriff Graves, or anyone acting or purporting to act on its or his behalf, regarding or in any way related to Deputy Arnold; and (3) all documents and tangible things (including letters and e-mail transmissions) provided or sent by LPPD or anyone acting on your behalf to the Livingston Parish Sheriff's Office, Sheriff Graves, or anyone acting or purporting to act on its or his behalf, regarding or in any way related to Deputy Arnold. See, R. Doc. 42-4, p. 4.

The subpoena directed to Matrix, Dr. Davis, and Dr. Rostow seeks the following documents: (1) all reports, tests or evaluation results (whether final, preliminary, or in rough form) drafted, compiled, or reviewed by Dr. Davis and Dr. Rostow or any employee, agent, or affiliate of Matrix regarding or in any way relating to Deputy Arnold; (2) all documents and tangible things (including letters and email transmissions), provided or sent to you or anyone acting on your behalf by the Livingston Parish Sheriff's Office, Sheriff Graves, or anyone acting or purporting to act on its or his behalf, regarding or in any way related to Deputy Arnold; (3) all documents and tangible things (including letters and e-mail transmissions) provided or sent by you or anyone acting on your behalf to the Livingston Parish Sheriff's Office, Sheriff Graves, or anyone acting or purporting to act on its or his behalf, regarding or in any way related to Deputy Arnold; (4) all notes taken or created by Dr. Davis and Dr. Rostow or any employee, agent, or affiliate of Matrix in the course of examining, evaluating, or speaking to or about Deputy Arnold; (5) records of all Fitness for Duty Evaluations, Critical Incident Stress Debriefings, M-PULSE Inventories, of or related to Deputy Arnold; (6) records of all pre-employment and post-employment tests, inventories, evaluations, screenings, or other assessments of or related to Deputy Arnold; (7) your complete file related to Deputy Arnold; (8) all scoring manuals, testing protocols, test scores, scoring booklets and/or manuals that reflect actual cutoff scores, scoring keys and interpretation protocols for the test(s) administered by Dr. Davis and Dr. Rostow to Deputy Arnold; (9) all psychological, psychiatric, and other medical records or medical summaries or similar records in Dr. Davis' and Dr. Rostow's possession related to Deputy Arnold; (10) all documents completed or signed by Deputy Arnold; (11) all scientific, technical, psychological articles, journals, books, treatises, or other publications relied upon by Dr. Davis and Dr. Rostow in their testing and other assessment of Deputy Arnold; and (12) all letters, emails, or other written recommendations made by Dr. Davis and Dr. Rostow to any person or entity regarding the employability, fitness for duty, or psychological or emotional status of Deputy Arnold. See, R. Doc. 43-4, p. 4-5.

information because the requests made in the subpoenas are "vague, overbroad, unduly burdensome and, in large part, not relevant to these proceedings." He contends that the information requested in the subpoenas directly infringes on the privacy interests of not only himself but also of LPPD and its employees and of Matrix and its employees. In the event the Court denies Deputy Arnold's request to have the subpoenas quashed, Deputy Arnold alternatively requests that the requested documents be subject to an *in camera* inspection by the Court to determine the discoverability and relevance of the items, with a protective order issued subsequently to prevent the production of any irrelevant and/or privileged documents.

## **LAW & ANALYSIS**

**I.     Standing to challenge subpoenas:**

The Court's first inquiry in ruling on a motion to quash a Rule 45 subpoena directed to a non-party, like the subpoenas at issue in this motion, is to determine whether the movant has standing to challenge the subpoena. A motion to quash or modify a subpoena under Rule 45 may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has alleged some personal privacy right or privilege in the documents sought. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d 783 (S.D. Tex. 2005). The undersigned agrees with Deputy Arnold that he has a personal right and privilege relative to his personnel files and other employment documents held by his former employer, LPPD, and relative to his mental health records maintained by Matrix. Accordingly, Deputy Arnold has standing to challenge the subpoenas in question.

## II. Deputy's Arnold's objections to the subpoenas:

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in its possession, custody or control. *See*, Fed. R. Civ. P. 45(a)(1)(A)(iii). Those items are properly discoverable if they relate to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). The information sought need not be admissible at the trial if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings. *Id.*

In addition to the discovery standards under Rule 26 incorporated by Rule 45, Rule 45 itself provides that "on timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv). Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. *RQ Const., Inc. v. Ecolite Concrete U.S.A.*, 2010 WL 3069198 (S.D.Ca. 2010); Fed. R. Civ. P. 45(c)(3)(B)(iii).

Finally, Fed. R. Civ. P. 26(c) permits a court, for good cause, to issue a protective order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding that the requested disclosure or discovery occur

4

Case 3:11-cv-00044-BAJ -CN   Document 52   11/10/11   Page 4 of 13

or by forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. See, Fed. R. Civ. P. 26(c).

**(A)　Subpoena to LPPD:**

To overcome a motion to quash, the requesting party must prove that he has adequately specified the materials sought in the subpoenas and that those materials are relevant and admissible. *U.S. v. Manghis*, 2010 WL 349583, *2 (D.Mass. 2010), citing *U.S. v. Nixon*, 418 U.S. 683, 698, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Furthermore, it has been held that a request for "any and all documents" relating to a particular subject is overbroad and amounts to little more than a fishing expedition. *Id.*[2] Since the second and third categories of the subpoena directed to LPPD are "any and all" requests that do not set forth with particularity what documents LPPD must produce, they will be quashed as being vague and overbroad.

Additionally, plaintiffs' request in Category 1 of the subpoena for Deputy Arnold's complete personnel file, his employment application, and similar related records is likewise overbroad in that it, at least in part, seeks information that is irrelevant to this suit and/or contains personal and confidential information. The District Court for the Eastern District of Louisiana faced a similar situation in the case of *Chauvin v. Lee*, 2000 Wl 6268 (E.D.La. 2000). In that case, the plaintiff sent a subpoena to a non-party, the Sheriff of St. Charles

---

[2] *See also, Cano v. Naku*, 2009 WL 1582851, *3 (E.D.Cal. 2009)(partially granting a motion to quash on the basis that it was overbroad in seeking any and all of the plaintiff's central file records and instructing the defendant to re-serve the subpoena specifically setting forth what documents must be produced); *Pollard v. E.I. DuPOnt de Nemours & Co.*, 2004 WL 784489 (W.D.Tenn. 2004)(holding that an "any and all" request was ambiguous and overbroad);*U.S. v. Ladd*, 471 F.Supp. 1150, 1157-58 (N.D.Tex. 1979)(request for "any and all correspondence and any other notes or memorandums pertaining to" the taxpayer is overbroad; it "does not provide sufficient particularity to identify records sought and "fewer than all records arguably within this language are relevant to the IRS's purpose).

5

Parish, seeking the personnel records and internal affairs division and citizen complaints files on a former St. Charles Parish Sheriff's deputy, and the Sheriff moved to quash the subpoena. In the complaint in that case, the plaintiffs alleged that the deputy, while working for the Jefferson Parish Sheriff's Department, deprived them of their constitutional rights, through excessive force, unlawful arrests, and unlawful searches and seizures. *Id.*, at *1. The plaintiffs also alleged that Jefferson Parish Sheriff Harry Lee negligently or intentionally hired the deputy despite the deputy's alleged history of unprofessional conduct while employed by the St. Charles Parish Sheriff. *Id.* The plaintiffs argued that the St. Charles Parish Sheriff's personnel files on its former deputy may contain relevant and discoverable information relating to past disciplinary reports and citizen complaints against the deputy. *Id.* The Eastern District of Louisiana found that, on the face of the complaint, the plaintiffs had made nonfrivolous allegations of serious misconduct, which the federal civil rights laws are designed to redress, and that it was improbable that the plaintiffs would be able to discover the relevant, discoverable information contained in the requested files by other means. *Id.*, at *3. It recognized, however, that the Sheriff of St. Charles Parish had raised some legitimate privacy and confidentiality concerns, which were not sufficient to prevent the discovery but which could be accommodated by an appropriate protective order. The Eastern District therefore chose to review the personnel files *in camera* to determine what information was relevant and discoverable. In doing so, it determined that much of what was contained in the files was wholly irrelevant (for example, documents relating to medical and annual leave, income taxes, weapons and uniform purchases, and health insurance and retirement plans). *Id.* The Sheriff's motion to quash was therefore granted as to those types of documents, and they were not required to be produced. The remaining

6

documents, such as training records, complaints by members of the public and records of termination of employment, however, were determined to be relevant and discoverable, and the Sheriff's motion to quash was denied as to those documents. Finally, the Eastern District ordered that the production of those personnel documents was to be made subject to a protective order. *Id.*[3]

Based upon *Chauvin*, the Eastern District of Louisiana also recently found that a subpoena essentially identical to the one in question directed to another of Deputy Arnold's former employers, Bombet Cashio & Associates ("Bombet"), was overbroad and that production should be limited to the documents produced in the *Chauvin* case. Specifically, in a miscellaneous action relating to a subpoena issued to Bombet in connection with the present case,[4] the Eastern District concluded that Bombet shall produce: (1) all certificates of training or courses completed by Deputy Arnold; (2) all records (not including payroll, pension or other financial records) of termination or separation of employment and reasons for same; (3) all documents relating to Deputy Arnold's performance; and (d) all evaluations for Deputy Arnold, with Deputy Arnold's social security number being redacted from all records produced. *Id.* The undersigned agrees with the scope of documents the Eastern District has identified as relevant to this litigation and will therefore order that LPPD produce

---

[3] The protective order provided that all social security numbers, home addresses, and home telephone numbers were to be redacted from the personnel documents. All information contained in the records was also to be marked and kept confidential and used only for purposes of the litigation and was not to be disclosed to any one except parties to the litigation, the parties' counsel of record, and experts retained in the connection with the litigation. All persons to whom such information was disclosed were to sign affidavits that had to be filed into the record, had to agree to the terms of the protective order, and had to submit to the jurisdiction of the Court for enforcement of those terms. Finally, if any party sought to add other terms to the protective order, counsel was required to confer immediately and submit by motion any proposed protective order.

[4] *See, Rice, et al v. Reliastar Life Ins., et al*, 11-2292-MLCF-SS (E.D.La. 2011).

the same documents in this litigation.[5] Additionally, as the Eastern District required, the records produced by LPPD shall be subject to the terms of a confidentiality order similar to that issued in *Chauvin*, and the parties shall meet-and-confer to confect a joint motion for entry of that confidentiality order within fifteen (15) days of this Order. If they cannot agree on the terms of a confidentiality order, the parties shall submit to the Court separate orders within fifteen (15) days of this Order, and the confidentiality order that most closely fits the needs of this case will be entered by the undersigned. Finally, LPPD shall produce the documents identified above within fifteen (15) calendar days of the receipt from plaintiffs' counsel of copies of the confidentiality order and this Order.

**(B)  Subpoena to Matrix, Dr. Davis, and Dr. Rostow:**

According to the deposition given by Deputy Arnold in this matter on July 21, 2011, the Sheriff's Office sent him to Matrix (a "professional psychological service corporation established to provide critical psychological and risk management services to public and private safety and security agencies, including members of the law enforcement"),[6] following the shooting incident that is at issue in this lawsuit, to undergo a Fitness for Duty test. *See*, Deputy Arnold's deposition, R. Doc. 47-1, pp. 103-105. As narrowed by the plaintiffs' opposition to the present motion, it is the records and test results relating to that

---

[5] While defendants contend that evidence contained in Deputy Arnold's personnel file showing that he was terminated by LPPD or engaged in prior use of excessive force while employed by LPPD constitutes inadmissible character evidence, plaintiffs correctly argue that admissibility is not the appropriate standard at this stage of the litigation. Even if such evidence is ultimately considered to be inadmissible for trial purposes, under the broad relevancy standard applicable during discovery, plaintiffs are entitled to discover the above evidence relating to Deputy Arnold's prior job performance at the LPPD at this juncture, particularly in light of plaintiffs' allegations in this suit that Sheriff Graves was negligent in hiring Deputy Arnold after his employment with the LPPD ended.

[6]  *See*, http://www.matrixinc.cc/aboutus.shtml.

8

Case 3:11-cv-00044-BAJ -CN   Document 52   11/10/11   Page 8 of 13

Fitness for Duty test that plaintiffs seek through their subpoena directed to Matrix and to Dr. Davis and Dr. Rostow, both of whom are licensed psychotherapists who practice at Matrix.

In *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the U.S. Supreme Court recognized a psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and [his or] her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee*, at 16. While the Court noted that, as with "other testimonial privileges, the patient may of course waive the protection," it declined to specify the "full contours" of the privilege or delineate under what conditions the privilege may be waived. *Id.* n. 14, 18, 116 S.Ct. 1923.

Since *Jaffee*, federal courts have generally held that mental health records must be protected from discovery unless it can be demonstrated that the patient has no reasonable expectation that the communications will remain private. With respect to Fitness for Duty tests, specifically, it has been concluded that no psychotherapist-patient privilege exists where, prior to the evaluation, the police officer is informed that the evaluation and testing results will be reviewed by the police chief, and the psychologist's written report could be subpoenaed in a lawsuit. *Scott v. Edinburg*, 101 F.Supp.2d 1017, 1020 (N.D.Ill. 2000); *Kamper v. Gray*, 182 F.R.D. 597, 599 (E.D.Mo. 1998)(rejecting the existence of a psychotherapist-patient privilege because the police officer was aware that his mental health evaluations would be reported to his employer, and thus he "has no reasonable

9

expectation of confidentiality regarding his communications with [the therapist]").[7] By contrast, it has also been held that the psychotherapist-patient privilege bars production of psychiatric records of officers involved in police shootings and other incidents, where the confidential communications were not disclosed to third parties, and the only information provided by the psychologist to the police department is a one-word statement as to whether the Fitness for Duty test was "passed" or "failed." *See, Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000). Under such circumstances, the psychological evaluation reports themselves have been held "completely confidential." *Id.*, at 162.[8] Thus, "[t]he determinative factor [in] assessing the existence of a psychotherapist-patient privilege is whether an officer had a reasonable expectation of confidentiality relating to the . . . counseling session or evaluation." *Estate of Turnbow v. Ogden City*, 254 F.R.D. 434 (D. Utah 2008), quoting *James v. Harris Co.*, 237 F.R.D. 606, 611-12 (S.D.Tex. 2006); *Scott*,

---

[7] *See also, Barrett v. Vojitas*, 182 F.R.D. 177, 179 (W.D.Pa. 1998)(post-shooting counseling reports regarding police officer held non-privileged where the reports were submitted to public officials); *Siegfried v. Easton*, 146 F.R.D. 98 (E.D.Pa. 1992)(compelling production of documents relating to the psychological/psychiatric evaluation or treatment of one of the defendant officers involved in a police brutality case. The particular records at issue were various psychological records compiled when the defendant officer interviewed for a position with the police department, which were then supplied to the police department. On those facts, the court found there was no expectation of confidentiality between the psychologist and the defendant officer: "[i]t is obvious from this description that when an applicant consults with [the] psychologist, he understands that the psychologist will be reporting back to the police department"); *Smith v. City of Plano*, 2002 WL 1483901 (N.D.Ill. 2002)(Psychiatrist's findings in a fitness for duty examination of police lieutenant were not privileged, despite the fact that the lieutenant was ordered to report for the examination, and the subpoena for those findings was not quashed because the lieutenant was clearly told, in a letter directing him to report for the examination, that the results would be shown to the police chief and no privilege existed).

[8] *See also, Williams v. District of Columbia*, 1997 WL 224921 (D.D.C. 1997)(in a fatal police shooting case, plaintiffs sought to compel production of records concerning consultations that defendant police officer had with psychiatrist after the shooting, and the court held that the privilege applied even though the consultation was to determine fitness to return to active duty, rather than for "treatment." The court found there was no waiver of the privilege because the only information communicated by the psychiatrist to the police department was "a 'Yes or No' recommendation regarding whether the officer should return to active duty").

Case 3:11-cv-00044-BAJ -CN   Document 52   11/10/11   Page 10 of 13

at 1020 ("The consistent thread that runs through all of these cases is that the threshold requirement for the existence of the psychotherapist[-]patient privilege is that there be an expectation by the patient that the communications with the psychotherapist will remain with the psychotherapist and will not be disclosed to others").[9]

While it appears, based upon Deputy Arnold's deposition testimony in the separate but related matter of *Livermore v. Arnold*,[10] that his Fitness for Duty testing by Matrix was mandated by his employer, it is not clear from his testimony what information relating to that testing was actually disclosed to his employer and whether Deputy Arnold had a reasonable expectation of confidentiality relating to the testing (and any counseling sessions) at Matrix. If Matrix and its employees merely disclosed to a third party that Deputy Arnold "passed" or "failed" the Fitness for Duty test, then the records sought through the subpoena directed to Matrix are subject to the psychologist-patient privilege, and the subpoena should be quashed. However, if the records relating to the Fitness for Duty test (and any counseling sessions) were disclosed by Matrix to third parties (such as Deputy Arnold's employer) and Deputy Arnold was fully aware that such disclosure would occur, the psychotherapist-patient privilege was waived, and Matrix is required to produce the documents requested in the subpoena. The undersigned believes and entrusts that Matrix, Dr. Davis and/or Dr. Rostow can make that basic determination based upon a review of their records concerning Deputy Arnold. In the event the privilege was waived by a disclosure of the test results/records to a third party, Matrix shall produce the

---

[9] *See also, Kamper*, at 599 ("[t]he psychotherapist-patient privilege cannot be invoked . . . in the absence of intended confidential communications"); *Barrett*, at 179 ("[t]he Court's reasoning [in *Jaffee*] clearly shows that confidentiality is the foundation upon which the psychotherapist-patient privilege rests").

[10] *See*, Excerpts from Deputy Arnold's July 21, 2011 deposition, Exhibit A to plaintiffs' opposition.

11

requested records within fifteen (15) days of receiving from plaintiffs' counsel a copy of the confidentiality order entered by the parties and a copy of this Order. *See, Poulos v. Village of Lindenhurst*, 2002 WL 485384 (N.D.Ill. 2002)(entrusting the responding entity to make the determination as to whether psychological test records were subject to the psychotherapist-patient privilege or whether such privilege had been waived because the patient knew the communications would be shared with a third party). As with the records produced by LPPD, the records produced by Matrix should also have Deputy Arnold's social security number redacted and should be produced subject to a confidentiality order entered by the parties.

Accordingly;

**IT IS ORDERED** that the motions to quash and for protective order (R. Docs. 42 and 43) filed by defendant, Deputy Joel Arnold, are hereby **GRANTED IN PART** and **DENIED IN PART** as set forth in the above Ruling.

**IT IS FURTHER ORDERED** that the Livingston Parish Police Department shall produce, within fifteen (15) days of receiving from plaintiffs' counsel copies of a confidentiality order entered by the parties and a copy of this Order: (1) all certificates of training or courses completed by Deputy Arnold; (2) all records (not including payroll, pension or other financial records) of termination or separation of employment and reasons for same; (3) all documents relating to Deputy Arnold's performance; and (4) all evaluations of Deputy Arnold, with Deputy Arnold's social security number being redacted from all records produced.

**IT IS FURTHER ORDERED** that Matrix, Inc., Robert D. Davis, Ph.D., M.P., and

12

Carey D. Rostow, Ph.D., M.P., shall determine whether the psychotherapist-patient privilege was waived by Deputy Arnold by a disclosure of his test results/records to a third party, and in the event such privilege has been waived, shall produce the documents requested in plaintiffs' subpoena (with Deputy Arnold's social security number being redacted from all records produced) within fifteen (15) days of receiving a copy of a confidentiality order entered by the parties and a copy of this Order. In the event Matrix, Dr. Davis, and Dr. Rostow determine that the privilege has not been waived, no records responsive to the subpoena shall be produced.

**IT IS FURTHER ORDERED** that any records produced in response to the subpoenas at issue shall be subject to the terms of a confidentiality order and that the parties shall meet-and-confer to confect a joint motion for entry of such confidentiality order within fifteen (15) days of this Order. If they cannot agree on the terms of a confidentiality order, the parties shall submit separate orders to the Court within fifteen (15) days of this Order, and the confidentiality order that most closely fits the needs of this case will be entered by the undersigned.

Signed in chambers in Baton Rouge, Louisiana, November 10, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**